The case this morning is Delarosa v. Department of Veteran Affairs, Mr. George. You may proceed. Thank you, Your Honor. And may it please the Court. In this appeal, there is no dispute between the parties that Veteran Albert Delarosa served in combat in Vietnam. There is also no dispute between the parties that the Veteran was separated from his wife, Margarita Delarosa, and that on July 15, 1994, he picked up their 14-year-old daughter, Joanne, from home, and then shortly thereafter killed Joanne with a single bullet to her head, a death that the police ruled was a homicide. He also then shot and killed himself with the same handgun, a death that the police ruled a suicide. There is also no dispute between the parties that for a widow such as Mrs. Delarosa to obtain service-connected death benefits, or DIC, the record must contain, 1, medical evidence that the Veteran suffered from a mental disorder, 2, medical evidence that the mental disorder was related to military service. The only thing we've got is Dr. Fullerton, right? Correct. At this point, the medical evidence that we have... He never examined Mr. Delarosa at all, did he? He met Ms. Delarosa years after the death of the Veteran, right? That is correct, Your Honor. Why isn't the Veterans Court completely correct in denying any further consideration? Well, Your Honor, the reason the Veterans Court is incorrect is because of the stage of the case. The main argument in this case, the main issue as presented, is the duty to assist under Section 5103A. But you've got to meet some kind of a threshold before there's a duty to assist, don't you? Well, actually, no. In terms of... No. I think that's not exactly what our case law says. Well, let me add some qualifier, Your Honor. All right. That the duty to assist does provide that assistance is not required if there's no reasonable possibility exists  And the case law of this court has, as discussed, I believe, as recently as in the Sanders case, discussed that the standard is a low threshold. And actually, if you look at the legislative history of the VCAA, that there was an intention on the part of Congress to eliminate, first of all, the well-grounded claim requirement that had been in existence prior to the VCAA. And in addition... Well, that's all under A, right? That's all under A. If A means what you say it means, why would Congress need B, C, D, E, F, and G? Well, Congress made it... I mean, in terms of... Congress added the other provisions, particularly added D, which Judge Davis actually addressed in this case. D related to specific service-connected disability compensation claims. But wouldn't that... Wouldn't medical exams for compensation claims be included under your reading of A? I mean, if A applies in all cases, and it says, if no reasonable possibility exists that some assistance would be... Why wouldn't medical exams come in with A? Yes, actually, medical examinations would come in under A. Okay, so why did Congress... How can we construe A in a way that would obviate any meaning for the rest of the provisions in that section? Sure, I understand. Well, Your Honor, if you look at... If you actually look at the legislative history of the VCAA, and actually, in particular, what we cited was the joint explanatory statement from October 17th of 2000, in which basically... which we cited at page 6 and 7 of our reply brief, that actually said that the exact type of assistance, such as obtaining documentary evidence or medical examinations or opinions, is not specified on the section, and the lack of specificity is not intended to limit the type of assistance required or rendered. And the committee also emphasized a little bit later that medical exams or opinions, in order for the secretary to fulfill the duty in other situations not mandated by the section under the general duty to assist under subpart 3, which became subpart A. So there is... So Congress did not intend to limit the duty to assist provisions only so that's what's contained in D, but also that's what's contained... so it covers what's contained in A as well. But also, in other words, other assistance might be provided under subsection A, notwithstanding the specificity of BCAA. That is correct.  Mm-hmm. So how can A mean what you say? Doesn't it at a minimum obviate the need for G? How do we give G any meaning if we accept your meaning of A? How does G... What more does G add? Well, G adds that there is... I mean, G provides basically there's nothing... Let me just take a moment here. Okay. I mean, G does not preclude any additional assistance. I mean, it doesn't... I mean, I would think that subpart A, the assistance included in A, is a general, all-encompassing provision. Right. That's exactly what... That's what G says, right? So that's what G's dealing with, that those other specific sections, B, C, D, whatever, don't preclude other assistance coming under A, correct? Correct. That is right. The problem for you, though, is it goes on to say, as the Secretary considers appropriate, doesn't that leave it to the decision-making of the Secretary to determine the propriety? Mm-hmm. Right? No, if you actually look, though, if you actually look to the legislative... Well, let's start at the language. We're not getting to the legislative history unless there's some glaring ambiguity here, right? Fair enough? Well, actually, though, it's my understanding, though, that even under, I believe, under United States Turquoise, which we mentioned in our reply brief, that basically, even if the language is unambiguous, that an unambiguous statutory language can be overcome by clear legislative intent to the contrary. So is there legislative history that says that it's not, as the Secretary considers appropriate, additional assistance other than in B, C, D, the specific assistance? Mm-hmm. It refers to subsection A specifically... Right. ...and says, as the Secretary considers appropriate. What I know from the legislative history is that the purpose of the VCAA was to basically prevent a situation that took place in the Morton case. The earlier Morton case was basically, the Veterans Court found that when the VA took it upon itself to do additional assistance, to actually provide what was other than what was in the statute, then that, indeed, was allowed under the law because Morton had prohibited that additional assistance that wasn't set forth in the statute. And so the VCAA really was to remedy that. I don't see, to me, what G provides as a safety for down the road, if additional assistance the Secretary is to provide to a claimant. It doesn't obviate what is in A and actually the clear legislative intent of A that the Secretary will not be limited to provide such things as a medical examination or opinion. It was expressly stated in the history. In fact, there's nothing in the language of the statute itself that states that under A, a medical opinion is not warranted for a DIC case. Can I just move on before you talk? Sure. Just one quick question. On the regulations on the suicide issue, why isn't it enough in this case that the Board determined whether there was found that there was a reasonable motive for suicide shown by the evidence? That's a factual determination. The Board found it. So notwithstanding whatever section of astute or cis we're talking about, why is it absolutely incumbent upon us to affirm this case on that basis? There are a few reasons why. First of all, we actually argued at the Veterans Court that the Board misinterpreted Section 3.302, and the Veterans Court actually did not ultimately reach that argument. There's an unresolved legal argument that the CAVC didn't reach. The Veterans Court actually stated that actually the provisions of 3.302 are not applicable because there was not a prior finding of service connection. So that is why we, you know, so there's an unresolved issue at the Veterans Court that they didn't address, and so therefore... Well, so if they said there's no service connection, why don't we have to defer to that conclusion? Well, Your Honor, we argued that that was actually, that that statement, that that ruling by the Veterans Court was incorrect as a matter of law, that the law does not require a prior finding of service connection in order for the provisions of 3.302 to be applicable. Wait, you're saying A)(3 says, it is a constant requirement for favorable action that precipitating mental insomnia be service connected. You're saying there's no service connection requirement? No, I'm not saying that, Your Honor. I'm saying that there's no prior requirement for service connection. If you look at the plain language of Judge Davis's decision, he actually says that without a prior finding of service connection, the provisions of 3.302 are not applicable. And so we actually cited, you know, case law I believe that one of the cases sheets is a lead case at the Veterans Court that basically in which the Veterans Court remanded, you know, remanded the case and service connection had never been established in the veteran's lifetime. Judge Davis was imposing upon Mrs. De La Rosa that they, that Mrs. De La Rosa... So it all rests on duty to assist. Is it your view that you don't have to put anything forward on service connection and it all falls on the duty to assist by the Veterans Administration? We actually argue that the, our argument is that this case is all about the duty to assist in that the analysis... To the extent there is, you acknowledge there is a service connection requirement, you're just saying that you don't have to come forward with anything with regard to service connection and it all rests on the VA's duty to assist. I'm saying that the 3.302 analysis is a merits-based determination in that the duty to assist is an analysis that takes place before adjudication of the claim on the merits. And so that is, so we are arguing that the, that unless the duty to assist has been satisfied here, analysis under 3.302 doesn't even come into play. However, we argue that the Veterans Court wrongly interpreted 3.302 as a matter of law by requiring a prior finding of service connection. You're into your rebuttal time. Do you want to use some of that or... I would actually, I'd just like to make a few more points  And basically what we're, as I mentioned before, that the record in this case, there are four medical elements that Mrs. de la Rosa needs to satisfy. And the Veterans Court ruled that Mrs. de la Rosa was not entitled to VA assistance on these medical issues because Dr. Fullerton is a physician to express an opinion covering these issues and not a licensed psychiatrist and rather was an internist and geriatrician. In other words, Mrs. de la Rosa had to obtain on her own evidence from a psychiatrist as to all these issues. And well, if she had to obtain a medical opinion from a psychiatrist on all four issues, then she would not need any assistance. And she would not, she would have to prove every single element of her case. And this interpretation of the statutory duty to assist by both the Board and the Veterans Court cannot stand. And that's what this case is about, that whether or not a DIC claimant like Mrs. de la Rosa is required to get every single piece of evidence to prove her claim or whether the VA is required to assist her in substantiating her claim by obtaining a medical nexus opinion. And that is why we're asking in this case for this Court to reverse the decision of the Veterans Court and to remand this case for compliance with the duty to assist so that Mrs. de la Rosa can obtain a medical nexus opinion. And I'd like to reserve the rest of the time for my rebuttal  Thank you, Mr. George. Mr. Hockey. May it please the Court. I think I'd initially like to address Judge Post's comments about 3.302. I think the discrement here is based upon a misunderstanding or misreading of the opinion below. The statement that issue is found at the top of appendix page 2, the last line of the paragraph that ends at the top of that page, which reads, Appellant's argument is unfounded because without a prior finding of service connection the provisions of 3.302 are not applicable. I believe what appellants are doing in this case is trying to interpret the prior word prior to what. Appellants would have you believe prior to death. We believe that it's prior to application of 3.302. And I think if you read the rest of the opinion, in which the rest of page 2 and part of page 3 is devoted to an examination of the evidence that the Board relied upon in denying the service connection claim, there can only be one conclusion, and that is there's no way that the Court interpreted 3.302 as requiring a service connection finding prior to death because the rest of the analysis is unnecessary if that was the case. All they need to do is say in this case there was no finding at the time of his death, end of story. Instead what we have is the entire analysis is designed to examine the Board's findings with respect to the claim that was presented after death and finding that there was no clear error in that case. But his argument still remains, which is that the VA still has no business saying that the duty to assist doesn't kick in before you impose upon him the requirement that there be a service connection. Now this gets to the duty to assist question. And I think, again, Judge Prost, you review the statute as we would review the statute. You can't read Section 5103A the way the appellant in this case would like to read it and still have B, C, D, and G present in the statute. If everything is entitled under 5103A, subsection A, there's no reason to provide the types of assistance that the Secretary would provide that is contained in B, C, D, and referred to in G. Now let's go back a little bit historically since that was part of the discussion earlier today and refer to 5107, which is the predecessor statute, which this Court has interpreted in absent other cases as sort of the well-groundedness statute, if you will. In that statute, in subsection B, there was the language that refers to the Secretary providing assistance, but it didn't define assistance. In fact, the only other thing at that time in the statutory scheme was 5106, which referred to federal agencies having to provide access to the VA in obtaining documents. So simply on the language of 5107, the Secretary provided assistance, but didn't specify how. Now the Morton decision comes along, as well as a couple of other decisions. The Morton decision is a Veterans Court claim in which the appellant argued that he was entitled to certain assistance because the Department of Veterans Affairs manual identified steps that the VA takes, typically in the regional offices, in developing claims. And the appellant in that case argued that the VA should be bound by that, and the decision was no, because the manual provisions were neither statutory or regulatory, the VA couldn't be bound by that. This led to the VCAA. And so what the VCAA does in section A of 5103A really is simply repeat what was already contained in 5107B, that the Secretary will provide assistance. The key part of the VCAA, for purposes of the duty to assist, is the rest of it. It provides standards by which a reviewing court, in this case the Court of Appeals for Veterans Claims, not this court, incidentally, could review the findings of the regional office and the board with respect to the steps that were actually taken in a particular case. So you have B, which applies to all claims, in which the Secretary says, we will gather documentary evidence. Then you have C, which says, we will actually do more for compensation claims, those veterans seeking compensation claims. We will perform these other tasks related to the document-gathering efforts. And then we have C, which also is limited to compensation claims, and says, and furthermore, we will provide medical exams and medical opinions provided certain conditions are met. And those are the conditions listed in subsection D and subsections N. Again, in 3.159, the implementing regulation of C-4. And then you have G. And the legislative history that was mentioned earlier, we understand that reference to providing additional efforts to pertain to G. And in fact, G was eventually added, specifically codifying the Secretary's obligation, not obligation, the Secretary's right, from the Secretary's perspective, to provide further assistance. It couldn't be put better, frankly, than in the proposed rule to the final regulation, which implements 3.159, or which created 159, which implements the statute, the 5103 A, which says that B, G, and D provide a floor, if you will, of what the Secretary will do. And that floor is designed to address those claims submitted by, especially C and D, by compensation claims. But G tells the Secretary that that's not the ceiling. The Secretary can do more. But in this case, the individual that's claiming the benefits doesn't fall within D. It falls outside of D. But that's what the court below applied. Now that's where we get to, what does this court do with this case? Why don't we send it back? We're all arguing about what A means. And that's not what provision was applied below, even though we all agree, government included, that's the provision that should have been applied below. So why not let them do it in the first instance? Pardon us, Your Honor. At a minimum. Our jurisdiction is really narrow. We're not here to decide facts or even reconsider the decision. The court need not decide any facts in this case. Or the application of law to fact, or any of that. The factual findings have already been made. The Veterans Court analyzed those factual findings under this McClendon case, as the court just sort of implied. Section D. Pardon me? The Section D. The Section D criteria. So, obviously, we believe that was error. We believe that the proper interpretation of G is that it's up to the discretion of the Secretary. And therefore, they shouldn't have been analyzing the evidence at all. They should have deferred to the Secretary's decision, in this case, in the form of the Board's decision that no further assistance was necessary. However, they apply D. We would submit that that is the, as the implementing regulation statement said, that is the floor, if you will. Whatever the standard could be, and again, we say that the standard is no standard. It couldn't be lower than D. Because D is what Congress and the VA said would apply for compensation claimants. So, therefore... So, you're saying they had even more leniency under A than they did under D, with regard to whether they were going to seek... There's no reasonable interpretation of either in the statute or the regulation that could allow a court, we believe, to reach a conclusion that a DIC claimant has a less restrictive avenue to assistance than the veteran himself. I hearken to... I'm sorry about that, but I refer the court to the Pelea decision, which was a decision this court issued earlier this year with respect to DIC claimants. And I think Judge Fieman noted in that decision the same thing. The VA is designed to address all claimants, to include DIC claimants, but in this case, the interpretation that would enable a non-veteran to obtain the assistance quicker than the veteran seems to be inconsistent with the... Wait, how does D apply, though, here? I mean, they didn't provide... So, you're saying, let's read D as being applicable to this case. For purposes of the court's harmless error decision, we would say that, although D was applied, no lesser standard could be applied, so, therefore, it's harmless, because they reached the decision that, in applying the standard, the Veterans Court held that the board's finding was not clearly erroneous under that standard. Are you arguing that there was a fact-finding below that there's no medical opinion necessary in this case? The board calls that... And, as such, we can... The application, once we construe A, its application, given that fact-finding, is indisputable, is that what you're suggesting? Absolutely. Okay. Now, here's my question. Why is there no medical opinion evidence necessary in this case? Clearly, the finding was that Mrs. De La Rosa failed to meet her burden of establishing a service connection, and even PTSD, really. I mean, the court below didn't even agree or wasn't willing to agree he even had PTSD to begin with, so why wouldn't a medical opinion have aided her in establishing or substantiating her case? Well, first of all, if we operate under the presumption that G applies, then the decision's been made factually below, and this court can't disturb that, because we would argue that there's no basis to review. Hypothetically, accepting that D applies, again, this court wouldn't be able to accept that factual finding, which the Veterans Court has already found to be not clearly erroneous. So there's nothing really left for this court to do for this case. Nonetheless, I want an answer. So the question is, really, goes to the reasonableness of the court's decision as to, given the facts presented to the board, that after 24 years separated from service, there had never been a claim or any evidence of even seeking treatment for any type of mental disability, and that the individual had identified in his own papers prior to his death the rationale for his taking his own life, and that the evidence offered in contradiction to this was three lay statements that he variously complained about, Vietnam service, and a report from a medical person not qualified to issue a psychiatric statement who had never met or evaluated Mr. De La Rosa, and had based everything he said in that letter upon conversations he had six years after the death. See, this is exactly where I'm going. You don't believe, counsel, do you, that below they've made a holding as a matter of law that because he's already dead, there's nothing a medical opinion could do here, because that would be a legal determination that would be of great concern to me. Clearly, there could be someone who's mentally unsound that didn't seek treatment during their lifetime, but their mental unsoundness is beyond dispute. I think they would have said that. Clearly, if that's where they were holding. They wouldn't have bothered to go through and review the evidence. I mean, the key point of all this is, and the appellant, Ms. De La Rosa, likes to raise this several times in her brief, the statement, and in a different context, it's raised in their brief, about there being no medical evidence at the time of his death. But I think that's a key point here for purposes of, if you will, reviewing the reasonableness of the board's decision, because if there had been some type of evidence, some indicia that he might have been suffering from PTSD, then there might be something for a medical opinion person to look at. But right now, we have nothing. And frankly... What about the testimony of all the individuals that knew him? Suppose 1,000 people lined up, willing to talk to a doctor and explain, based on their firsthand eyewitness observations of this particular individual, how he acted and how it started the day he got back from the military and never stopped. That would never, under any set of circumstances, be sufficient to establish this? In this court's decision in general this past summer, the court examined the difference between lay testimony and medical testimony. And the court clearly distinguished between when lay testimony might be sufficient to address certain medical questions and when it wasn't. And footnote 4 of that opinion sort of says, in the context of the in-service criteria... Now, first of all, that's a distinguishing factor between this case and that, because the criteria trying to be met here is the present disability factor. But simply to continue my discussion, in terms of the in-service criteria, this court distinguished between, for example, lay testimony relating to a broken leg versus cancer. We would submit, obviously, setting aside the distinction between the prongs, the in-service versus present disability, that mental health and the diagnosis of PTSD requires a medical finding. And indeed, the regulations support that. 38 CFR 4.125 requires medical evidence in conformity with DSM-IV to support a finding of a post-medical... a mental disability. And so, ultimately, in this case, you need to have some medical evidence establishing a mental disability. No monolay evidence is ever going to answer the question here. And this court's decision in general is completely consistent with that. Any questions? Thank you, Mr. Hockey. Mr. George, you have... a little less than 2 1⁄2 minutes left. Yes, sir. Thank you very much. The, um...this case, in just addressing the points that were raised earlier with respect to the interplay between A of 5103A and subpart G, A is the floor in which the secretary shall make reasonable efforts. This interpretation of A in what subsection A... of what subsection A reviews, what it requires, rather, is judicially reviewable. It's something by which this court has de novo review to review. G covers what, if you look at the language of G, it allows the secretary to do more. It allows the secretary to do more than what A requires. But again, A is the floor of which that must be... that, basically, the secretary must fulfill as part of its duty to assist. Now, also, in terms of the discussion earlier about what threshold that Mrs. de la Rosa must submit prior to the secretary's assistance in this case, I'd like to make reference to the case of Sheets. And in the Sheets case, which we cited in our reply brief, Sheets actually dealt with... And in this case, the widow actually had satisfied the burden. Satisfied the burden that kicked in the duty to assist by presenting evidence of the veteran's combat experiences which showed that these were stressors of the type that would show PTSD. In our case, it's clear that Mrs. de la Rosa was a combat veteran. Also submitted medical evidence showing that the veteran submitted stress as related to an ulcer that he had in service. In our case, we have a statement from Dr. Fullerton. In addition, lay statements of friends and relatives describing the stressful events in service. We have that in this case. And finally, a statement, evidence of the death by suicide. In this case, we do have clear evidence in our case that Mr. de la Rosa did indeed end his life. Now, so, for the reasons that we explain in our briefs and what we discussed today, we do ask that this court reverse the decision of the Veterans Court into remand in this case for compliance with the duty to assist so that Mrs. de la Rosa may obtain a medical nexus opinion. Thank you. Thank you, Mr. George.